STALLINGS, trustee, *v.* NEWTON, sheriff, *et al.*

1. Delivery of a deed conveying real property is essential to its validity, and is only complete when the deed is accepted.
2. A proper and legal registry of an instrument raises a presumption of delivery, sufficient to establish the fact, unless rebutted. An unauthorized registry raises no such presumption, and in that case the validity of the instrument is not established until delivery is affirmatively shown.

Argued May 2, — Decided May 16, 1900.

Petition for injunction. Before Judge Reagan. Monroe superior court. February 13, 1900.

*John F. Redding,* for plaintiff. *Cabaniss & Willingham* and *King & Spalding,* for defendants.

LITTLE, J. Ida L. Stallings exhibited to the judge of the superior court a bill praying an injunction, in which she alleged that she was the widow of C. C. Stallings, deceased; that she was the head of a family consisting of herself and five minor children; that in April, 1880, her husband was largely involved in debt, and voluntarily executed a deed to her conveying a certain tract of land in Monroe county. She alleges that she had no knowledge of the intention of her husband to make her a deed of gift of said land; that in October, 1880, she repudiated the deed of gift, which she alleges had never been delivered to her, and elected to take a homestead in the land as the property of her husband; that she made application to the ordinary of said county, on the refusal of her husband so to do, and had set apart for the benefit of herself and minor children a homestead in the land which was described in the deed from her husband to herself. She further alleges that by intimidation and duress her husband forced her, subsequently to the setting aside of the homestead, to sign an application to borrow money, giving the said land as security; that she never received any money and had nothing to do with the transaction other than to sign the papers presented; that her husband died subsequently, and the debt for the borrowed money was never paid; that the notes given for the same were sued to judgment, and the execution issuing thereon was levied on the land which is included in the homestead, which was duly advertised and sold by the sheriff and purchased for the plaintiff in execution. She alleges that the sheriff and the attorney for the plaintiff in execution threaten to dispossess petitioner from her homestead; that they are interfering with her tenants and are seeking to obtain possession and control of said land. She thereupon prays for an injunction to restrain the sheriff and B. S. Willingham, attorney for Hattie E. Stanley, a non-resident, who was the plaintiff in execution, from interfering further with her in the possession and control of such land, and that such injunction be made permanent. The petition is verified. On its presentation a rule was granted, calling on the defendants to show cause why the injunction should not be granted; and a restraining order in terms of the prayer of the petition was granted until the hear-

ing. At the hearing the defendants presented an answer, making substantially the following case: When the husband of the petitioner made the deed in 1880 he was seized of said land and had a right to convey the same, and he did convey it by warranty deed which was fully executed, recorded, and delivered on the 29th of April, 1880; and under said deed petitioner remained in possession until dispossessed by the sheriff. It is denied that the petitioner repudiated the deed, and denied that she had any right to have had a homestead set apart out of the land described therein. They further aver that when the notes given for the land by the petitioner were sued on, she appeared and filed various pleas — among others, the pleas of usury, and duress, that the money was borrowed to pay her husband's debt; and that the jury returned a verdict against her on each and all of said pleas. It is averred that, when execution was issued from the judgment rendered on the notes for borrowed money in favor of Mrs. Stanley, the land was properly advertised and sold, and purchased by the plaintiff in execution; that afterwards the sheriff, who is one of the defendants, and the attorney at law for Mrs. Stanley went to the land for the purpose of putting petitioner out of possession; that thereupon she surrendered the possession under an agreement that she might keep the premises until December, 1899, and, failing to give this possession, she was subsequently evicted, but has recently entered upon and forcibly taken possession of the premises and is now holding the same without any claim of right or title.

The evidence at the hearing was substantially as follows: The petitioner testified, that her husband died in 1892; that since his death she has lived upon the land which she claims as a homestead, together with her five minor children, the oldest of which is about seventeen years of age; that she is now in possession; that in April, 1880, her husband made her a deed of gift to said land, which includes the homestead; at which time he was in debt to a number of persons, and such deed being void as to creditors, she abandoned the same and made application to have the land described in the deed set aside to her as a homestead, the same being the property of her husband, and he refusing to make such application. She further testified as to the

fact of the sale, the attempted interposition of a claim by her, and that the sheriff, one of the defendants, together with the attorney for the plaintiff, came to her house and moved out her goods, which she immediately removed into another house on the same land, without objection, and that she is now in possession and has been continuously so. The petition for homestead, together with subsequent proceedings and the approval of the ordinary, all appearing to be regular, were introduced in evidence. The defendants' evidence tended to show the eviction of the petitioner from the land by the sheriff, and by agreement it was shown that, in defense of the suit instituted on the notes given by the petitioner for the borrowed money, she filed the several pleas named in the defendants' answer, and that a verdict was rendered against her on said pleas. There was also introduced for the defendant a deed signed by petitioner, conveying to Hattie E. Stanley certain lands in Monroe county for the consideration of three hundred dollars, reciting that the conveyance was made to secure the payment of $300, with interest thereon. Also, an instrument signed by the petitioner, constituting J. J. Rogers her agent to negotiate a loan for her of $300, to be secured by a mortgage or absolute deed to her farm in Monroe county. Rogers testified that he had made the loan to the petitioner; that she spoke to him about it, and signed the application; that when the money came he notified her, and she came to his office and signed the papers, and he paid the money over to her. This evidence was denied to be true by the petitioner in rebuttal. It further appeared that after the sale the sheriff executed a deed to Mrs. Stanley to the property. Defendants also introduced what purported to be a deed from C. C. Stallings to Ida L. Stallings, only the material part of which is referred to. The instrument bore date April 29, 1880. The consideration recited was the love and respect which the grantor had for his wife, Ida Stallings. It then purported to convey to Ida Stallings all the property of the grantor, both real and personal, which the grantor owned, and then specifically named 116 acres of land which it was admitted embraced the land described in the homestead, together with all the crops growing and made on said place during the year 1880. As it appears in the rec-

ord, this instrument is simply signed by C. C. Stallings, without an attestation clause, and does not bear on its face any recital or evidence that it was signed, sealed, and delivered by the grantor, nor are the names of any witnesses attached thereto. By an entry it appears to have been recorded on April 29, 1880. The judge refused the injunction, and the petitioner excepted.

Under the evidence in this case, all legal questions, save one, are easily eliminated. After the judgment had been rendered against the petitioner, it was entirely too late for her to raise the question as to her liability on the notes given for the borrowed money. The questions of usury, duress, and other matters of defense were settled by the judgment against her, which must be taken as final and conclusive of the various facts insisted on in her petition as avoiding her liability; and that judgment created a good and valid lien on all of her property, which it was the plaintiff's right to enforce. The sole question which remains is, whether she had title to the land which she conveyed to Mrs. Stanley as security for the debt, under the conveyance made to her by her husband. If she had, the injunction was properly refused. If she had not, but held it as the beneficiary of a homestead set aside out of the property of her husband, then the instrument executed by her was of no effect, and the judgment rendered on the notes given created no lien on the land set apart. It can not make any difference, if the homestead is valid, whether she did or did not, at the time she borrowed the money, represent that the land belonged to her and that it was unincumbered. In the case of *Planters Bank* v. *Dickinson,* 83 *Ga.* 711, it was ruled, where a wife created a mortgage on land which had previously been set apart out of her husband's estate to her as a homestead, that she was not estopped from denying the validity of such mortgage. In the opinion, which was delivered by our present Chief Justice, it is declared that "there is no law which will prevent her from denying her capacity to make this particular contract. She or any one else can claim the protection of the constitutional provision denying her or them the right to make such a contract." If the homestead was legally set apart, then, necessarily, the land which it embraced belonged to the husband. The legal effect of so setting it apart

was not to vest the title in her and the other beneficiaries, but to give her and.them the use of it, which use could not be defeated by the ordinary debts of the husband. The husband could not alienate the land, nor she the use of it. These are the legal incidents of the homestead estate. If, then, she could not alienate the usufruct with which the law had invested her, it must follow that this result could not be reached by the application of the doctrine of estoppel. Being forbidden by the law to convey it, the conveyance would not be rendered valid because at the time of its execution she represented that it was her property and she had a right to convey it. Not being, then, estopped from denying the validity of the conveyance to Mrs. Stanley, the rights of the latter under that conveyance must depend upon the title which the maker had, and this is to be determined by ascertaining the effect of the deed made by Stallings to his wife, the petitioner, in 1880. This was a voluntary conveyance, the consideration being love and affection, and, of course, is subordinate to the rights of his then-existing creditors. In the petition which she exhibited, Mrs. Stallings alleges that she had no knowledge of her husband's intention to make her a deed of gift; that she repudiated said deed of gift in October, 1880, and that it had never been delivered to her. The allegations made in the petition are sworn to, and thereby were entitled to be considered as a part of her evidence on the hearing. In her affidavit found in the record, she says that when her husband made this deed in April, 1880, he was indebted to a number of persons in various amounts, and because of such fact the deed was no protection to her and she abandoned the same. If it be true that the deed was never delivered to her, or that she refused to accept the deed and take under it, then it did not have the legal effect to vest the title in her nor divest that of the husband. A deed to land must not only be·in writing and signed by the maker, but it must be delivered to the purchaser or to some one for him. Civil Code, §3599. Delivery of a deed is essential to the conveyance of title thereby. Without delivery, the deed is nothing, and conveys no title. *Maddox v. Gray,* 75 *Ga.* 452. Necessarily, delivery by the grantor includes acceptance by the grantee. It was said by our present Chief Justice in the opinion which he delivered in

the case of *Beardsley* v. *Hilson,* 94 *Ga.* 50, " Delivery of a deed consists of more than the mere handing of the deed to the grantee. . . Where a grantee retains a deed without objection, acceptance will be inferred. It is a presumption of law that a party accepts whatever is for his benefit; but this presumption may be rebutted." And, referring to the section of the code which we have just quoted, he says, " that the deed must be accepted, we think . . is to be implied from the requirement that the deed shall be delivered; for without acceptance, as we have already said, there can not be a complete delivery so as to pass title."

If, in construing the evidence of Mrs. Stallings wherein she says that in April, 1880, her husband *made* her a deed of gift to the land, it be claimed that this implies delivery, we are not prepared to assent to the conclusion. In the case of *Buffington* v.*Thompson,* 98 *Ga.* 416, it was claimed that a deed there under consideration was not valid, for want of delivery. It appeared that the defendant, who was attacking the deed, had by her pleading admitted that the grantor had " executed " the deed in question. The court held that the word " executed," when used with reference to a conveyance, technically comprehended not only signing and sealing, but delivery also, but that in a popular sense it meant signing and sealing; and construed the plea to make only this admission, because it further appeared that the defendant in her plea averred that such deed had never been accepted by the grantee. So, we think, taking all of the evidence of Mrs. Stallings on this subject together, that it amounts to a distinct assertion that she never accepted the deed of gift from her husband. Whether this be true or not is a question of fact upon which the allegation and proof that in six months after the date of such deed she applied for a homestead in this land, alleging it to be the property of her husband, sheds some light. If it be said that the deed was admitted to record and that such record raises a presumption of delivery, the reply is that the evidence of Mrs. Stallings may be considered sufficient to rebut such presumption in the entire absence of any evidence on the part of the defendants showing delivery. Another view, however, may be

urged on this point. As it appears in the record, the deed has no attestation clause, no witnesses, and it does not bear on its face any recital of delivery. While it is true that a deed without witnesses is legal and binding between the parties (*Johnson v. Jones,* 87 *Ga.* 85; *Howard* v. *Russell,* 104 *Ga.* 230), without execution in the presence of witnesses the instrument is not entitled to record. In order to entitle it to record it must be attested or acknowledged. Civil Code, § 3620. The registration of the instrument, therefore, was wholly ineffective, and accomplished no purpose. A copy of it could not be read in evidence, nor is it even notice. *Rushin* v. *Shields & Ball,* 11 *Ga.* 636; *Jones* v. *Morgan,* 13 *Ga.* 515. The record of the instrument was ineffectual to give it more incidents than it would have if it had not been recorded at all. No presumption of delivery can arise from such record. Taking the case as it stands, we have on one side a deed of conveyance requiring proof by the defendant of execution, which includes delivery, in order to pass title, and an absolute denial on the part of the petitioner that delivery was ever made. The homestead appears to have been regularly and legally set apart. It is unquestioned that the husband owned the land prior to the deed of gift. If such deed for any reason did not convey title to Mrs. Stallings, then the land was the property of the husband at the time the homestead was set aside. If it was, then the conveyance to Mrs. Stanley did not operate to carry title nor afford any security; and, the homestead being legal, the petitioner should not be interrupted in her possession of the land. These, being all questions of fact, are to be determined finally by a jury. On the hearing of an application for an injunction, the judge of the superior court lawfully exercises this prerogative; and if the record contained any evidence showing delivery to and acceptance by the petitioner of the deed in question, we would not disturb his finding; but inasmuch as the record, as it appears here, contains no evidence from which the legal conclusion can be drawn that the deed was delivered and accepted, we are constrained to rule that the trial judge should have granted the injunction.

*Judgment reversed. All concurring, except Fish, J., absent.*